# MAHER & PITTELL, LLP
ATTORNEYS AT LAW

*Reply To:*
**42-40 Bell Blvd, Suite 302**
**Bayside, New York 11361**
**Tel (516) 829-2299**
*jp@jpittell.com*

*Long Island Office*
**14 Bond St, Suite 389**
**Great Neck, New York 11021**
**Tel (516) 829-2299**
*jp@jpittell.com*

June 11, 2018

Hon. George B. Daniels
U.S. District Court
500 Pearl St
New York, NY 10007

Re:   *US v. Ojeda, et. al.* {Dwight Anderson}15 cr 487 (GBD)

Dear Judge Daniels:

We are counsel to Dwight Anderson, a Defendant in the above matter.

Please accept this letter in lieu of a formal motion for: Modification of the Judgment of Conviction and Reconsideration of the Sentence Imposed.

## Modification of the Judgment of Conviction

During the sentencing proceeding, we indicated that Mr. Anderson seeks to enroll in the HVAC Apprenticeship Program offered at FCI Fairton. As such, we requested Your Honor make a sentencing recommendation, to the Bureau of Prisons, specifying that he be designated to FCI Fairton or in the alternative, any other facility which offers the HVAC apprenticeship program.

In the Judgement of Conviction (ECF Doc. 398), the sentencing recommendation states, "*[t]he Court respectfully recommends Defendant be designated at FCI Fairton or another facility with an apprenticeship program.*" We respectfully request this provision be modified by inserting the word "HVAC" before "apprenticeship."

## Reconsideration of the Sentence Imposed

During the sentencing proceeding, and in our Sentencing Memorandum, we requested that Your Honor sentence Mr. Anderson to a term of 120 months and then adjust this sentence in accordance with U.S.S.G. §5G1.3.

Among other reasons, we made this request from a disparity perspective. As the Government indicated during sentencing, Mr. Anderson was a mid-level participant in the conspiracy. To date, there have been essentially three groups of sentences imposed: 60 months; 120 months; and, (in one instance) 180 months. All these defendants were sentenced along the line of the governing statutory

mandatory minimum sentence in their cases. From this perspective, all of the mid-level participants were sentenced to terms of 120 months.

As indicated in our Sentencing Memorandum, and as discussed during sentencing, when the Indictment was filed in this case, Mr. Anderson had just started serving a sentence for a drug distribution case in Pennsylvania (the "Pennsylvania Case"). Mr. Anderson's Pennsylvania offense conduct was a direct part of the drug distribution conspiracy charged in this case. The Offense Conduct section of the PSR expressly states, as part of his offense conduct, "ANDERSON also regularly transported narcotics from the Bronx to Pennsylvania which he distributed there." (PSR ¶37). As such, in the calculation of Mr. Anderson's Criminal History Category, the PSR did not attribute any criminal history points to the Pennsylvania Case. (PSR ¶64).

Mr. Anderson was arrested, and incarcerated, on the Pennsylvania Case on March 4, 2016. Shortly thereafter, he pleaded guilty and was sentenced. On July 11, 2016, approximately four months after Mr. Anderson was arrested for the Pennsylvania Case, he was brought into this District, pursuant to a writ of habeas corpus ad prosequendum, for prosecution on above captioned the Indictment. On that date, he was arraigned and an order of detention was issued. Thereafter, during the following 23 months, Mr. Anderson remained in federal custody. However, since Pennsylvania has primary jurisdiction over Mr. Anderson, pursuant to 18 U.S.C. §3585(b), the Bureau of Prisons will not credit any of this jail time, spent in federal custody, toward Mr. Anderson's federal sentence.

In our Sentencing Memorandum, and during the sentencing proceeding, we informed that U.S.S.G. §5G1.3 specifically serves to rectify this inequity. For circumstances such as Mr. Anderson's case, this section states, "the court *shall* adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." U.S.S.G. §5G1.3(b)(1) (emphasis added). As such, this provision requires that the sentence imposed by Your Honor be reduced by the 27 months which he has served on the Pennsylvania Case.

In accordance with U.S.S.G. §5G1.3, in fashioning a sentence, we indicated Your Honor should initially determine an appropriate sentence for Mr. Anderson and, then, reduce it by 27 months to account for this provision within the Sentencing Guidelines. *See e.g., U.S. v. Madrid*, 193 F. Supp. 3d 234 (SDNY (VM) 2016) (initially determining a sentence of 204 months was appropriate for a federal money laundering offense then reducing it to 131 months, pursuant to U.S.S.G. §5G1.3, to give credit for 73 months served under a Mexican sentence for the same offense). For the initial sentence, we urged Your Honor to sentence Mr. Anderson to the same 120 month sentence imposed upon all of the other middle tier defendants. Thereafter, we further urged this initial sentence should be reduced by 27 months in accordance with §5G1.3. However, in this instance, since the final sentence imposed upon Mr. Anderson was 120 months, in reality, the initial sentence imposed upon him was 147 months (which was, in essence, reduced by 27 months per U.S.S.G. §5G1.3).

We submit that imposition of a sentence of 147 months results in a seemingly unfair disparity between Mr. Anderson and similarly situated defendants all of whom were sentenced to 120 months.[1]

Wherefore, based upon the foregoing, we respectfully request the Court reconsider and modify the imposed term of 120 months and reduce it by 27 months in accordance with U.S.S.G. §5G1.3.[2]

Respectfully submitted,
/s/
Jeffrey G. Pittell

cc:   AUSA Jared Lenow
      Dwight Anderson

---

[1] As indicated in our Sentencing Memorandum, two particularly comparable co-defendants are Christian Ramos and Robert Matos. Ramos pleaded guilty to the same Count (Count 1) as Mr. Anderson. They share the same stipulated advisory Sentencing Guideline range. They had the same role in the Ojeda conspiracy (mid-level participants with neither an aggravating nor mitigating role). In his plea agreement -- like Mr. Anderson -- Ramos acknowledged he participated in a non-fatal shooting and other acts of violence. Matos pleaded guilty to a 924(c) (discharge) count which required imposition of a mandatory minimum sentence of 120 months. Similar to Ramos, he and Mr Anderson had the same role in the Ojeda conspiracy (mid-level participants with neither an aggravating nor mitigating role). The shooting in Matos' offense (on Hoe Avenue in the Bronx) stemmed from same incident as the one admitted by Mr. Anderson during his guilty plea

[2] Mr. Anderson pleaded guilty to conspiracy to violate 21 U.S.C. §841(b)(1)(A). In the normal course, this offense sentence requires imposition of a mandatory minimum sentence of 120 months. However, a sentencing court has authority to impose a sentence below the statutory mandatory minimum when U.S.S.G. §5G1.3 is applicable. See *U.S. v. Rivers*, 329 F.3d 119 (2d Cir 2003) (indicating §5G1.3(b)(1) shall be employed to adjust statutory mandatory minimum sentences required in drug distribution offenses under 21 U.S.C. §841).